UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

CHUZA OIL COMPANY,                                             No. 18-11836-t7

     Debtor.

PHILLIP J. MONTOYA,
Chapter 7 Trustee,

     Plaintiff,

v.                                                                     Adv. No. 20-1025-t

SHEANEH SATTARI,

     Defendant.

## **OPINION**

Five months after a default judgment was entered against her, Defendant moved to set it aside under Fed. R. Civ. P.[1] 60(b)(3), (4), or (6). The Court denied the motion but gave Defendant a deadline to seek the relief under Rule 60(b)(1). The second motion is now before the Court. For the reasons set forth below, the Court concludes that the motion is not well taken and must be denied.

A.     Facts.

       The Court finds:[2]

---

[1] Hereinafter, a "Rule." Rule 60(b) applies in this proceeding pursuant to Fed. R. Bankr. P. ("Bankruptcy Rule") 9024.

[2] The Court takes judicial notice of its docket in this case, the main bankruptcy case, and Debtor's 2014 chapter 11 case, no. 14-12842-t11. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket[s]).

Defendant has two master's degrees, including one from King's College London. Defendant has owned and operated a neurofeedback therapy business, formed a number of limited liability companies, and managed her father's real estate investments and finances. She is intelligent and has experience in business and commercial dealings.

Defendant met Bobby Goldstein in 2013 or 2014, when he was a client at a neurofeedback clinic where Defendant worked. Defendant and Mr. Goldstein developed a professional rapport. Thinking that her father (Dr. Sattari) and Mr. Goldstein might make good friends, she introduced them. Eventually, the association led to Dr. Sattari investing $500,000 in Chuza Oil Company, an oil production company Mr. Goldstein controlled and largely owned. The investment was in the form of a common stock purchase, which Dr. Sattari put in Defendant's name.

Not long after Dr. Sattari made his investment, Chuza suffered what Mr. Goldstein described as a "financial catastrophe." Mr. Goldstein and Dr. Sattari agreed to convert Dr. Sattari's investment from equity to debt—for which Chuza, and perhaps Goldstein,[3] would be liable. A 10% interest rate was agreed upon, as were monthly payments of $5,000, payable to Defendant. This agreement was informal, documented (if at all) in an email that is not in evidence. Nothing in the record indicates when the agreement was made.

Chuza filed a chapter 11 bankruptcy case in September 2014. If Defendant's equity interest in Chuza was converted to debt pre-petition, it was not reflected in Chuza's bankruptcy schedules, statement of financial affairs, or list of equity security holders, which show Defendant as a shareholder holding 2% of Chuza's capital stock.[4]

---

[3] Goldstein testified that he is not certain whether he agreed to be personally liable for the debt.
[4] Chuza did not include Defendant's address in the list of equity security holders. Consequently, Defendant was never given written notice of the bankruptcy filing; the first meeting of creditors; the bar date; Chuza's plan and disclosure statement; or the deadline to object to the plan.

The Court confirmed Chuza's third amended plan of reorganization in October 2015. The plan treated Defendant as an equity security holder. Under the plan, equity security holders retained their shares.

The Court closed the case in July 2016. Between October 2016 and July 2017, Chuza made nine payments to Defendant, totaling $50,000. These payments are consistent with treating Defendant's interest in Chuza as debt rather than equity.

Chuza's reorganization failed; on July 25, 2018, Chuza's creditors filed this involuntary chapter 7 case. The Court entered an order for relief on August 27, 2018, and the U.S. Trustee appointed Plaintiff the case trustee.

Plaintiff filed a number of adversary proceedings to recover payments made by Chuza in the two years before the involuntary petition date, including proceedings against Defendant, Mr. Goldstein, and Mr. Goldstein's mother and daughter. This adversary proceeding, filed April 21, 2020, sought to recover the $50,000 Chuza paid Defendant.

The Court issued a summons on April 23, 2020. Plaintiff served the complaint and summons by mail on April 30, 2021. The summons provides:

> **YOU ARE SUMMONED** and required to file with the clerk of the bankruptcy court a motion or answer to the attached complaint **within 30 days after the date of issuance of this summons**[.]
> . . . .
> IF YOU FAIL TO RESPOND TO THIS SUMMONS, YOUR FAILURE WILL BE DEEMED TO BE YOUR CONSENT TO ENTRY OF A JUDGMENT BY THE BANKRUPTCY COURT AND JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.

The summons gave an address where an answer could be filed, as well as the name, address, and telephone number of Plaintiff's counsel. The summons also notified Defendant of a June 12, 2020, scheduling conference, at which she could appear by telephone.

When Defendant received the complaint and summons in the mail on May 10, 2020, she sent a text message to Mr. Goldstein attaching a photo of the summons, saying that she "need[ed] to understand it." Goldstein responded, "don't worry about this. [I] am aware of it. [W]ill explain in an email this week coming up."

On May 12, Defendant followed up with Mr. Goldstein, texting that she was "trying not to worry but its becoming difficult." On the same day, Mr. Goldstein and Defendant had the following email exchange:

> Defendant: Hi Bobby, I am very worried about this court summoning that I have received. Do I need to consult with an attorney? Do I have to show up. I must speak with you. Please Call me.

> Goldstein: sasha: there is a lawyer already working on this. It is very defensible according to him. he will probably handle it since he is also defending my mother (really), my daughter (really), and of course me. i am getting him some papers on this and he will communicate with me later this week. i would hold up a bit if i were you. once i have given him all the records he has asked for, we will talk after i talk to him one last time. lawyer's name is cliff gramer in new mexico. Please do not call him because i am paying his bills and don't want any extra charges.

Relying on Mr. Goldstein's representation that Mr. Gramer "will probably handle it," Defendant did not call Mr. Gramer, contact the Court, file a pro se answer, ask for more time, contact counsel for the trustee, or consult or retain another lawyer. The answer date came and went with no action taken by anyone.

Mr. Goldstein had hired Mr. Gramer to represent him and his mother and daughter in the adversary proceedings brought against them. Mr. Goldstein believed Mr. Gramer had also agreed to represent Defendant in this proceeding. Mr. Gramer did not have the same understanding. Both acknowledge that there was a miscommunication on this crucial point.

Plaintiff filed a motion for default judgment on June 4, 2020. On June 10, 2020, the Court entered a default judgment against Defendant for $50,000.

When Defendant received a copy of the default judgment she texted Mr. Goldstein, seeking an explanation. Mr. Goldstein responded that he is "sure this is an error." He called Mr. Gramer to find out what had happened. After they talked, Mr. Goldstein sent Mr. Gramer this email on June 11, 2020:[5]

> cliff: this dropped through my cracks, as i didn't make clear to you that i was going to take care of this problem for sasha sattari. if possible, please review and determine what can be done to have the default set aside and the claim defended if possible. let me know when you can.

On June 22, Mr. Goldstein sent two emails to Mr. Gramer, stressing the need to take prompt action in response to the default judgment. Mr. Gramer responded on June 23, 2020, stating that he is "gonna need information for a motion. What was the excusable neglect?" Mr. Goldstein replied:

> the excusable neglect is that i thought it was in your pile. i didn't realize it wasn't until sattari showed me a judgment. she had no idea she was not being represented. as i earlier started [sic], i hold you harmless for, as i didn't make it clear that . . . .[6]

On August 21, 2020, Mr. Gramer sent Mr. Goldstein a draft motion to vacate the default judgment against Defendant. The draft motion alleges excusable neglect and seeks relief under Rule 60(b)(1). For some reason, Mr. Gramer did not file the motion.

On October 20, 2020, Plaintiff garnished Defendant's bank account, causing the bank to place a $50,000 hold on her funds. Again Defendant contacted Mr. Goldstein, and again he contacted Mr. Gramer. Mr. Gramer and Defendant spoke for the first time on October 22, 2020.

---

[5] Mr. Gramer's billing records from June 11, 2020, show that he received a phone call from Mr. Goldstein "that Sattari was his fault and he'll send an email and let's look at it. Says Sattari got payments from Chuza out of money he put in, and feels bad because he got Sattari into it and she is broke but has assets, etc." This, apparently, is the first entry related to Defendant's case.
[6] The record does not include the rest of this email message.

Finally, on November 3, 2020, Mr. Gramer filed a motion to set aside the default judgment, omitting Rule 60(b)(1) altogether and relying on Rule 60(b)(3), (4), and (6).[7]

For the reasons set forth in the Court's opinion entered on April 30, 2021, the Court denied the motion, without prejudice, however, to Defendant seeking relief under Rule 60(b)(1). Defendant hired new counsel, who filed the current motion on May 28, 2021.

B.  The Motion is Not Barred by Claim Preclusion.

As an initial matter, the Court addresses Plaintiff's argument that the motion is barred by claim preclusion because Defendant could have sought relief under Rule 60(b)(1) in her initial motion but did not. Plaintiff's argument is not well taken.

Plaintiff is correct that successive motions under Rule 60(b) can implicate the equitable principles of issue and claim preclusion.

> [I]t remains proper to require a party to advance in the first proceeding all matters that were reasonably available at that time. If a motion to vacate is made on grounds of excusable neglect, for example, failure to add the assertion that it is void for lack of personal jurisdiction should preclude a second motion based on the jurisdictional ground, just as failure to raise the jurisdictional objection in the original proceeding would preclude a later attack.

18A Wright & Miller, Federal Practice & Procedure § 4447 (3d ed.) ("Wright & Miller"). However, claim preclusion generally does not bar successive claims or motions for relief if the first claim or motion is denied without prejudice. *See, e.g., Beach Blitz Co. v. City of Miami Beach, Fla.*, 13 F.4th 1289, 1300 (11th Cir. 2021) ("Final merits judgments are, as a rule, claim-preclusive, . . . then again, we usually understand 'without prejudice' to mean that a judgment is not claim-preclusive") (citation omitted); *Camarano v. Irvin*, 98 F.3d 44, 47 (2d Cir.1996) ("It is well

---

[7] The reason for the delay is not clear. Though Mr. Gramer's billing records show he charged Mr. Goldstein for work on Defendant's proceeding as early as June 11, the November 3, 2020, motion is his first filing in the proceeding. Furthermore, although Mr. Gramer's normal practice is to have an engagement letter with his clients, there is no engagement with Defendant.

established that a dismissal without prejudice has no res judicata effect on a subsequent claim"); *Satsky v. Paramount Commc'ns*, 7 F.3d 1464, 1468 (10th Cir. 1993) ("dismissal without prejudice . . . does not have a res judicata effect").

Although the Court denied Defendant's motion to set aside the default judgment under Rule 60(b)(3), (4) and (6), the Court expressly granted Defendant 30 days within which to file a motion seeking relief pursuant to Rule 60(b)(1). This unequivocal denial without prejudice forecloses Plaintiff's preclusion argument. Exercising its discretion, the Court overrules Plaintiff's claim preclusion objection to the motion. *See* Wright & Miller, § 4447 *supra* (applying equitable principles of claim and issue preclusion is a matter within the court's discretion).

C.  <u>Defendant Did Not Show Excusable Neglect</u>.

Defendant seeks relief under Rule 60(b)(1), which provides:

> On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect[.]

Defendant argues, specifically, that excusable neglect justifies the relief she seeks.

"[F]or purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a . . . deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 394 (1993). Neglect "encompasses both simple, faultless omissions to act and, more commonly, omissions caused by carelessness." *Id.* at 388.

The burden of proving that any neglect was excusable is on the party seeking relief. *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990). The trial court "has substantial discretion in connection with a Rule 60(b) motion." *Id.,* citing *Greenwood Explorations, Ltd. V. Merit Gas & Oil Corp.*, 837 F.2d 423, 426 (10th Cir. 1988). Whether neglect is excusable "is at

-7-
Case 20-01025-t    Doc 85    Filed 12/03/21    Entered 12/03/21 14:49:48 Page 7 of 12

bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer*, 507 U.S. at 395. [8]

In *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005), the Tenth Circuit listed four factors for the trial court to consider when ruling on "excusable neglect:"

- the danger of prejudice to the opposing party;
- the length of the delay and its potential impact on judicial proceedings;
- the reason for the delay, including whether it was within the reasonable control of the movant; and
- whether the movant acted in good faith.

An additional consideration, based on the desire to avoid needless litigation, is whether the Defendant has a meritorious defense. *Jennings*, 394 F.3d at 857, citing *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983).

    1.    <u>Prejudice to Plaintiff</u>. Defendant argues that allowing her to file an answer now would not prejudice Plaintiff because there has been no loss of evidence and the memories of witnesses are relatively fresh. Plaintiff, on the other hand, argues that the delay has been prejudicial because of the potential for lost or faded witness memories, and also because of the interest in finality.

Mr. Goldstein's testimony at the October 26 final hearing lends support to Plaintiff's faded-memory concern (Mr. Goldstein testified that he could not remember whether he had personally guaranteed repayment of Dr. Sattari's converted debt). However, if this proceeding went to trial

---

[8] In *Pioneer*, the Supreme Court noted that "excusable neglect" is used in several places in the Rules and has a commonly accepted meaning. 507 U.S. 391-93. This view has been applied by the Tenth Circuit Court of Appeals. *See, e.g., U.S. v. Torres*, 372 F.3d 1159, 1162 (10th Cir. 2004) (the Supreme Court's construction of "excusable neglect" in *Pioneer* applies to Rules 4(a)(5) and 4(b) of the Federal Rules of Appellate Procedure); *City of Chanute, Kan. v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994) (recognizing the "commonly accepted meaning" of "excusable neglect").

Mr. Goldstein's recollection could be refreshed by a review of contemporaneous documents and correspondence.

Furthermore, had Defendant answered the complaint in June 2020, the Court likely would have tried the proceeding in the summer of 2021.[9] Were the Court to set aside the default judgment, trial likely would occur in the first quarter of 2022. The resulting prejudice probably would not be significant.

Plaintiff's interest in finality is legitimate: finality is an ever-present consideration in the context of Rule 60(b). *See Brown v. McCormick*, 608 F.2d 410, 413 (10th Cir. 1979) (Rule 60(b) relief is "an extraordinary procedure" and "must be considered with the obvious need for the finality of judgments."). Nevertheless, the "'whole purpose' of Rule 60(b) 'is to make an exception to finality.'" *Buck v. Davis*, 137 S. Ct. 759, 779 (2017), quoting *Gonzalez v. Crosby*, 545 U.S. 524, 529 (2005); *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 580 (10th Cir. 1996) (recognizing "the delicate balance between the finality of judgment and justice that Rule 60(b) seeks to maintain").

Court concludes that the prejudice factor tips slightly in Plaintiff's favor.

2.  The Length of the Delay. More than a year passed between Defendant's May 23, 2020, answer deadline and May 28, 2021, when Defendant filed her Rule 60(b)(1) motion. That is a significant delay, which weighs against Defendant. *See, e.g., Tessmer v. Walker*, 833 F.2d 925, 927 (11th Cir. 1987) (prompt filing of a Rule 60(b) motion is a consideration that may militate in favor of granting relief); *Rodgers v. Watt*, 722 F.2d 456, 460 (9th Cir. 1983) (prompt filing of a Rule 60(b) motion after receipt of notice of dismissal is a factor); *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) (prompt filing of a Rule 60(b) motion is a factor in granting relief).

---

[9] A trial in a related proceeding, filed two and half months before this one, was held in May 2021.

3. <u>The Reason for the Delay</u>. The most important factor in examining excusable neglect is the reason for the delay. *Jennings*, 394 F.3d at 856 (the question of fault may be "the most important single factor" in determining whether neglect is excusable); *City of Chanute*, 31 at 1046 (fault in the delay is "perhaps the most important single factor[] in determining whether neglect is excusable"). "Generally, excusable neglect seems to require a demonstration of . . . some reasonable basis for noncompliance within the time specified in the rules." Wright & Miller § 1165, n. 25 and accompanying text (discussing Rule 6(b)(1)(B)).

"Parties desiring relief [under Rule 60(b)(1)] . . . do not acquit themselves of responsibility by showing merely that they placed the case in the hands of an attorney." *Pelican Prod.*, 893 F.2d at 1146 (quoting 7 Moore's Federal Practice ¶ 60.22[2], at 60–184 (2d ed.1987)); *Felts v. Accredited Collection Agency, Inc.*, 406 F. App'x 309, 312 (10th Cir. 2011) (unpublished) (same). Here, Defendant did not even do that—she placed her defense in the hands of a friend, relying on *him* to place it in the hands of his attorney. This supports a finding of carelessness, but not of excusable neglect. *See, e.g., Design & Development, Inc. v. Vibromatic Mfg., Inc.*, 58 F.R.D. 71, 72 (E.D. Pa. 1973) (defendant's claim that he relied on the representations of a co-defendant's attorney that "he had nothing to worry about" does not clearly qualify as a ground for relief from judgment); *Williams v. Swanson*, 57 F. App'x, 784, 787-88 (10th Cir. 2003) ("mistaken belief that his co-defendant's attorneys . . . or his own attorney" is handling a lawsuit or relying on "assurances made by counsel" does not constitute excusable neglect for failing to respond to a lawsuit.).

Defendant's initial decision to rely on Mr. Goldstein to ensure that Mr. Gramer would "handle" her defense was imprudent. Continuing to rely on Mr. Goldstein as the answer date drew near was worse. Had Mr. Gramer "handled" the defense, he would have entered his appearance in

the proceeding and sent a copy to Defendant; sent Defendant an engagement letter; called Plaintiff's counsel; interviewed Defendant, Mr. Goldstein, and Dr. Sattari; gotten correspondence and documents from each of them; and sent a draft answer to Defendant for review. Likewise, by the answer date Mr. Gramer would have filed the answer or a motion for an extension of time. Instead, Defendant went into default without ever talking to or corresponding with Mr. Gramer, and without ever receiving any evidence that he was representing her. Defendant knew the lawsuit was important and had to be dealt with. She should never have let the answer date come and go in reliance on Mr. Goldstein's vague statement that Mr. Gramer "will probably handle it."

Furthermore, Defendant should never have tolerated the lengthy delay in moving to set aside the default judgment. Defendant should have realized almost immediately that the people who failed her once were failing her again.

The critical "reason for the delay" factor weighs against Defendant.

4. <u>Good Faith</u>. There is no evidence of bad faith on Defendant's part. Defendant credibly testified that she relied on Mr. Goldstein's assurance that Mr. Gramer would handle her defense. This was a poor decision, but not made in bad faith. Once the default judgment had been entered, furthermore, Defendant wanted prompt corrective action. Her desire to move quickly, although thwarted, is a sign of good faith. *See, e.g., Griffin v. United States*, 2013 WL 5676206, at *4 (D.N.J.), This factor weighs in Defendant's favor.

Balancing all the factors and weighing the reason for the delay more heavily, the Court finds that Defendant's neglect was not excusable. By this finding the Court does not mean to imply that the conduct of Messrs. Goldstein and Gramer was excusable; on the contrary, their cavalier disregard for Defendant's interests is very disturbing. Nevertheless, the Court finds that Defendant cannot be excused for failing to ensure that her interests were adequately represented.

5. <u>Meritorious Defense</u>. Having concluded that Defendant's did not show excusable neglect, the Court need not consider whether she has a meritorious defense. *See, e.g.*, *In re Stone*, 588 F.2d 1316, 1321-22 (10th Cir. 1978) (motion to set aside default judgment requires a showing of a meritorious defense and a showing of excusable neglect, therefore, a defendant's failure to prove one obviates the need to consider the other); *Cessna Finance Corp.*, 715 F.2d at 1445 (same).

<u>Conclusion</u>

Defendant did not carry her burden of showing that her neglect in failing to answer the complaint in this proceeding was excusable. Defendant relied on Mr. Goldstein's representation that Mr. Gramer "will probably handle" her defense, even though she had never communicated with Mr. Gramer and had received no indication that he was handling anything. Reliance under such circumstances was a mistake that someone of Defendant's intelligence and experience should not have made, especially as the answer date drew near. The mistake was compounded by the long delay in seeking relief once Defendant learned of the default judgment. Defendant should have wasted no time finding a lawyer who would swiftly and diligently represent her interests. The Court will deny the motion in a separate order.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: December 3, 2021
Copies to: Counsel of record